IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>    Applicant,<br><br>v.<br><br>NORTHWESTERN MUTUAL LIFE INSURANCE CO.,<br><br>    Respondent. | Case No. |

**MEMORANDUM IN SUPPORT OF APPLICATION FOR AN ORDER TO SHOW CAUSE WHY ADMINISTRATIVE SUBPOENA SHOULD NOT BE ENFORCED**

The United States Equal Employment Opportunity Commission ("EEOC" or "Commission") applies for an order to show cause why an administrative subpoena should not be enforced. EEOC is currently investigating a charge of sex, race, color, and national origin discrimination and retaliation filed against Respondent, Northwestern Mutual Life Insurance Co. ("Northwestern Mutual"), under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-9 ("Title VII") by Charging Party Mark McNulty.

ty, who alleged that he and other employees were denied employment opportunities as a result of Northwestern Mutual's Diversity, Equity, and Inclusion ("DEI") initiatives.

To investigate this charge, EEOC issued a subpoena seeking documents relating to McNulty's employment and Northwestern Mutual's various DEI initiatives, documents related to other individuals who may have been affected by these initiatives, and an interview of Northwestern Mutual's Vice President of Diversity and Inclusion. Of the 21 requests for documents sought by EEOC through its subpoena, Northwestern Mutual has provided an

1

incomplete production in response to requests 1, and 4-7, and no production in response to requests 8-21. (Northwestern Mutual sufficiently responded to requests 2-3.) Northwestern Mutual makes several objections to production, including that these requests are too broad because they relate to the class claims in McNulty's charge and not to McNulty himself, and that it is unable to produce responsive documents related to its DEI initiatives unless EEOC identifies with particularity the precise programs EEOC claims violate Title VII. But arguing that EEOC must identify illegal conduct before giving it an opportunity to investigate the claim, is putting the proverbial cart before the horse: EEOC has repeatedly informed Northwestern Mutual that it is seeking information to determine whether there is reasonable cause to believe that Northwestern Mutual has violated Title VII with respect to McNulty and others at the company. Northwestern Mutual's failure to produce its employee for an interview and the requested documents has delayed and hampered the investigation of the Charge. EEOC therefore applies to this Court to issue an order to show cause why the subpoena should not be enforced.

I. BACKGROUND

Northwestern Mutual is a financial services company operating in Milwaukee, Wisconsin. Declaration of EEOC District Director Amrith Aarke ("Dir. Decl.") ¶ 5. On March 1, 2025, Charging Party filed a charge of discrimination under Title VII against Northwestern Mutual. Dir. Decl. ¶ 4, Att. 1. As described in the Charge, Charging Party McNulty worked for Northwestern Mutual as an Anti-Money-Laundering Officer in its Milwaukee, Wisconsin Location. *Id*. McNulty alleged that Northwestern Mutual discriminated against him and a class of similarly situated individuals on the basis of their color, national origin, race and sex when it enhanced its existing Diversity Equity and Inclusion policy by focusing on providing additional

support and opportunities for women and people of color. McNulty asserted that he was illegally denied a promotion due to these initiatives and in retaliation for complaining about the same. *Id.*

EEOC sent Northwestern Mutual notice of the Charge on March 1, 2025. Dir. Decl. ¶ 6c, Att. 2. Northwestern Mutual provided its Position Statement in response on May 2, 2025. Dir. Decl. ¶ 6d. In its Position Statement, Northwestern Mutual claims that McNulty was not qualified for the promotions he sought and asserts that its diversity initiatives do not allow for hiring or promotions based on "race, sex, or any other protected class." Northwestern Mutual also denied any acts of retaliation. *Id.,* Att. 3.

As part of its investigation, EEOC sent Northwestern Mutual a Request for Information ("RFI") dated May 21, 2025. Dir. Decl. ¶ 6e. The information sought included documents in the following categories: (1) general corporate information regarding the operation of McNulty's department (Requests 1-3); (2) personnel information of specific company employees including McNulty (Requests 4-7); and (3) information about the operation of the company's DEI policies and practices (Requests 8-21). *Id.,* Att. 4. EEOC also requested to interview Amy Hanneman, Vice President of Diversity and Inclusion, to obtain information relating to these policies and practices. *Id.* On June 4, 2025, Northwestern Mutual provided a written response to EEOC's RFI and made a minimal production relating to the first 7 requests – largely duplicates of information already submitted with its Position Statement, refused to produce any additional material relating to its diversity and inclusion policies and programs (Requests 8-21), and refused to produce Ms. Hanneman for an interview. Dir. Decl., Att. 5.

On June 11, 2025, EEOC provided an email response to the issues raised by Northwestern Mutual. Despite a follow up telephone call held on June 12, 2025 and additional

email correspondence between the parties on June 13, 19, 23, and 27, Northwestern Mutual refused to increase its production in any substantive way. Dir. Decl., Att. 7 and 9.

Given Northwestern Mutual's continued unwillingness to provide basic information, despite having received multiple explanations from two EEOC representatives over the phone and by email, and despite EEOC's agreement to modify the temporal scope of Requests 11-21, EEOC served a subpoena on Northwestern Mutual on June 27, 2025 mirroring its RFI. Dir. Decl. ¶ 7 and Att. 6.

On July 3, 2025, Northwestern Mutual submitted a Petition to Revoke or Modify the Subpoena. Dir. Decl. ¶ 8 and Att. 7. On September 4, 2025, the EEOC issued its Determination, denying Northwestern Mutual's petition to revoke or modify the subpoena. Dir. Decl. ¶ 9 and Att. 8. On October 6, 2025, Northwestern Mutual informed EEOC that, with a minor exception, it intended to stand on its objections and refused to provide the information sought by EEOC. Dir. Decl. ¶ 10 and Att. 9.

As of the date of this filing, Northwestern Mutual has provided no further records and remains in non-compliance with Subpoena No. CHMK-2025-1. Northwestern Mutual's subpoena non-compliance has hampered EEOC's investigative efforts. *Id*. Therefore, subpoena enforcement is appropriate.

II. ARGUMENT

EEOC is investigating a charge alleging that Northwestern Mutual discriminated against McNulty by failing to promote him because of his race (White), sex (male), color, and national origin (American-Irish) and because he complained about discrimination within the company. McNulty specifically alleged that that Northwestern Mutual's recently enhanced DEI policy focuses on providing additional support and promotional opportunities to women and people of

4

color. McNulty claims he complained about this policy, and that, as a result of the policy and his complaints, Northwestern Mutual failed to promote him. Finally, McNulty alleges that Northwestern Mutual's policy discriminates against others based on their sex (male), race (White), color, national origin (American) in violation of Title VII.

EEOC followed its usual procedure when it began its investigation of this charge by issuing an RFI related to the allegations in the charge, seeking some general corporate information about the department in which McNulty was employed (Requests 1-3), personnel information necessary to determine the validity of McNulty's claim that he was illegally denied a promotion that was instead given to someone less qualified (Requests 4-7), and information about the company's DEI policies and practices which McNulty alleges resulted in his failure to obtain the promotion he sought and affected others working for the company (Requests 8-21). Northwestern Mutual has objected to providing nearly any of this information.

### A. EEOC'S SUBPOENA IS ENFORCEABLE

Northwestern Mutual has no basis to argue that EEOC's subpoena is not enforceable by the Court. The Supreme Court has recognized that "it is critical that the Commission's ability to investigate charges of discrimination not be impaired." *EEOC v. Shell Oil Co.*, 466 U.S. 54, 69 (1984). As a result, EEOC subpoena enforcement proceedings are summary in nature and involve limited judicial review. *EEOC v. Aerotek, Inc.*, 815 F.3d 328, 333 (7th Cir. 2016) (citing *EEOC v. United Air Lines, Inc.*, 287 F.3d 643, 649 (7th Cir. 2002)).

To petition a court to enforce its administrative subpoena, the Commission need only show that: 1) the subpoena is within the agency's authority; 2) the demand is not too indefinite; and 3) the information sought is relevant to the investigation. *Univ. of Pa. v. EEOC*, 493 U.S. 182, 192 (1990); *Aerotek*, 815 F.3d at 333. Once this showing has been made, a court will

enforce the subpoena unless the Respondent can prove that the subpoena is unduly burdensome. *Aerotek, Inc.*, 815 F.3d at 333 (citing *Dow Chemical Co. v. Allen*, 672 F.2d 1262, 1266-67 (7th Cir. 1982)). Applying these principles, Subpoena No. CHMK-2025-1 should be enforced.

### 1) **The subpoena is within EEOC's statutory authority.**

Congress has authorized EEOC to investigate charges of discrimination alleging Title VII violations. 42 U.S.C. § 2000e-5(b). Further, Congress conferred on EEOC broad access to records of entities against whom charges have been filed, 42 U.S.C. § 2000e-8(a), including the authority to subpoena evidence in an investigation. 29 U.S.C. § 161 (incorporated into Title VII by 42 U.S.C. § 2000e-9). And Title VII's implementing regulations explicitly permit "a subpoena requiring...[t]he attendance and testimony of witnesses." *See* 29 C.F.R. § 1601.16(a).

Here, EEOC is investigating allegations of discrimination as they pertain to McNulty's individual claim as well as the class claims alleged in the charge[1], all of which fall within its authority to investigate. 42 U.S.C. § 2000e-2(a). Since class claims are at issue here, EEOC appropriately seeks information beyond McNulty's personal experience. Northwestern Mutual's objections regarding the breadth of some of these requests are therefore invalid.

Further, EEOC has fulfilled all procedural prerequisites to enforce the subpoena. The procedure leading up to an EEOC subpoena enforcement action is minimal. A court will have jurisdiction over an enforcement action when EEOC, before serving the subpoena, issued a Charge to the employer and the employer had notice of the Charge. *See EEOC v. Shell Oil Co.*, 466 U.S. 54, 65-67 (1984). Before serving the subpoena on Northwestern Mutual, EEOC issued

---

[1] The Charge states, in relevant part, "I believe Respondents (sic) policy has similarly discriminated against others based on their sex (male), race (White), color, national origin (American) in violation of Title VII of the Civil Rights Act of 1964, as amended." Dir. Decl, ¶ 6a, Att. 1.

6

Charge No. 440-2022-03982. Dir. Decl. ¶¶ 4-5, Att. 1 and 2. Northwestern Mutual received this Charge and provided a Position Statement in response. Dir. Decl. ¶¶ 5-6, Att. 2. Northwestern Mutual makes no objection to the procedural process for its service *Id.* Therefore, this Court has jurisdiction over this matter.

### 2) The subpoena demands are not too indefinite.

Other courts have found an administrative subpoena to be not too indefinite to be enforced where "the documents sought in the subpoena appear to be readily identifiable and definite enough to enable [Northwestern Mutual] to comply with the subpoena." *NLRB v. G. Rabine & Sons, Inc.*, 2001 WL 1772333 at *5 (N.D. Ill. 2001) (citing *NLRB v. Brown Transp. Corp.*, 620 F. Supp. 648, 653–54 (N.D. Ill. 1985) ("'[t]he terms of the subpoenas were not unlimited, and the records were particularized to such records as would show certain specific information.'") (quoting *NLRB v. N. Trust Co.*, 148 F.2d 24, 29 (7th Cir.1945)).

Here, Northwestern Mutual objects to multiple requests relating to its Diversity and Inclusion initiatives and programs, claiming that the requests are too indefinite and asking EEOC to identify the elements of these programs and initiatives that violate Title VII. But Northwestern Mutual misapprehends the purpose of an EEOC investigation. EEOC does not initiate an investigation after *concluding* that a company has violated the law, but rather to determine whether or not it has done so.

The subpoena does not use the phrase "diversity and inclusion" in a vacuum. EEOC uses this language because it is the language that Northwestern Mutual has used. The subpoena quotes Northwestern Mutual in Request Nos. 7, 11-15, 17, 20-21. Virtually all of the subpoena requests that reference "diversity and inclusion" contain additional description that focuses the requests on key questions like complaints (No. 10), training offered on the basis of race, national

origin, sex or sexual orientation (No. 11), and specifically named reports or strategy documents (Nos. 15 & 17). The suggestion that Northwestern Mutual does not understand these requests is simply not credible.

Northwestern Mutual cites four cases that it claims adopt the conclusion that the terms "diversity and inclusion" are too broad. Dir. Dec., Att. 9, p. 3. None is controlling and all are easily distinguishable. None of the cited cases involved consideration of the terms "diversity and inclusion" in the context of an administrative subpoena and none involved the use of these terms in documents created by an employer. In *Keathley v. Spire, Inc.*, 348 F.R.D. 344, 347-48 (E.D. Mo. 2024), a court refused to compel production of "DEI Policies" in the context of a discrimination claim brought by a single employee where the employer denied that it maintained any such policy. Unlike this investigation, there was no allegation of class wide harm and Northwestern Mutual has not denied that it has diversity and inclusion initiatives. The other three cases, *McDonald v. National Endowment for the Humanities*, 792 F. Supp. 3d 448 (S.D.N.Y 2025), *Am. Pub. Health Ass'n v. Natl Institutes of Health*, 145 F.4th 39 (1st Cir. 2025), *Am Pub. Health Assn v. Natl institutes of Health,* 791 F. Supp. 3d 119 (D. Mass 2025), are not employment cases but instead involve First Amendment analysis and say nothing about the use of the phrase "diversity and inclusion" in connection with the collection of information from an employer who has used the same term in the context of its employment policies and practices.

Northwestern Mutual has also refused to produce its VP of Diversity and Inclusion for an interview, arguing that she had no role in the decision not to promote the McNulty. But EEOC is primarily interested in speaking to her about Northwestern Mutual's various Diversity and Inclusion initiatives to determine how they operated. If Northwestern Mutual were truly interested in clarity regarding EEOC's specific requests, it would not object to producing its VP

of Diversity and Inclusion for an interview. The subpoena clearly identifies the categories of records sought for a defined time period using Northwestern Mutual's own language. And the subpoena reasonably sought to interview Northwestern Mutual's employee with expertise in the area. Therefore, the subpoena is not too indefinite to be enforced.

### 3) The subpoenaed information is relevant to the investigation.

The subpoena falls within EEOC's broad authority to seek information relevant to its investigation of unlawful employment discrimination. Section 709(a) of Title VII grants EEOC access to "any evidence of any person being investigated or proceeded against that relates to unlawful employment practices covered by [Title VII] and is relevant to the charge under investigation." 42 U.S.C. § 2000e-8(a). EEOC subpoenas enjoy an "expansive definition of 'relevance,'" with the Supreme Court observing that "[c]ourts have afforded the Commission access to virtually any material that might cast light on the allegations against the employer." *Shell Oil*, 466 U.S. at 68-69, n.20 (quoting *U.S. v. Arthur Young & Co.*, 465 U.S. 805, 814-15 (1984)). EEOC does not need to present a "specific reason for disclosure" of the requested information, *Univ. of Pa.*, 493 U.S. at 194 (1990), and "district courts should defer to agency appraisals of relevance unless they are 'obviously wrong.'" *McLane Co. v. EEOC*, 581 U.S. 72, 137 S. Ct. 1159, 1169 (2017) (quoting *Director, Office of Thrift Supervision v. Vinson & Elkins, LLP*, 124 F.3d 1304, 1307 (D.C. Cir. 1997) and *EEOC v. Lockheed Martin Corp., Aero & Naval Systems*, 116 F.3d 110, 113 (4th Cir. 1997)).

Northwestern Mutual objects to certain requests on the grounds that they relate to independent contractors not employees, or that they relate to discrimination not specifically against McNulty (e.g., Nos. 11-14, 16-18), and therefore these requests exceed EEOC's investigatory authority because, Northwestern Mutual argues, they do not apply to McNulty's

personal experience (despite being alleged in the charge). But Northwestern Mutual neglects to consider that EEOC is also investigating class allegations contained in the charge and that even non-employees may have relevant information about discrimination.

Here again, Northwestern Mutual is in essence asserting a defense to the charge without permitting the EEOC to make its own findings based on evidence it collects during its investigation. *See E.E.O.C. v. Peat, Marwick, Mitchell & Co.,* 589 F. Supp. 534, 538 (E.D. Mo. 1984), aff'd, 775 F.2d 928 (8th Cir. 1985) (enforcing EEOC subpoena despite Respondent's claim that requests relate to partners and not "employees" covered by the statute because "it is possible that Respondent may label some of its members as "partners" when in fact, those members may not fit withing the traditional definition of the term"). Northwestern Mutual may, of course, provide evidence supporting this defense at any time during the investigation or in any potential litigation. But any potential defense on the merits does not excuse Northwestern Mutual from its obligation to comply with the Commission's administrative subpoena and produce this information.

### B. COMPLIANCE WITH THE SUBPOENA WILL NOT IMPOSE AN UNDUE BURDEN ON NORTHWESTERN MUTUAL

Once it is shown that the administrative subpoena is within the agency's authority, the statutory requirements have been met, and the information sought is relevant, the Court must enforce the subpoena unless the employer shows "'the demands are unduly burdensome or unreasonably broad.'" *United Air Lines*, 287 F.3d at 653 (quoting *FTC v. Shaffner*, 626 F.2d 32, 38 (7th Cir. 1980)). To do so, the employer must demonstrate that "compliance would threaten the normal operation of [its] business." *EEOC v. Aaron's Inc.*, 779 F. Supp. 2d 754, 759 (N.D. Ill. 2011) (quoting *United Air Lines*, 287 F.3d at 653).

This is a burden that Northwestern Mutual has not met. The company merely states, without explanation, that complying with many of EEOC's requests would be unduly burdensome. Dir. Dec., Atts. 6 and 7. Northwestern Mutual does not claim that producing the requested information would in itself be difficult or costly, still less that it would threaten the very operation of its business. Broad unsupported assertions of burden are not enough.

To the extent Northwestern Mutual maintains it would be "burdensome" to release information to the EEOC without a guarantee that McNulty would be barred from reviewing it – because he allegedly "harbors animus and ill-will" towards certain employees, it has not met its burden. Charging Parties are not part of the "public" to whom disclosure of confidential information is illegal under §§ 706(b) and 709(e). *See EEOC v. Associated Dry Goods Corp.*, 449 U.S. 590 (1981). EEOC may obtain these materials and may share them with the McNulty if it will assist in the investigation. If an employer's reluctance to see material shared with a Charging Party were sufficient to prevent production, EEOC would never find an employer who was willing to produce information.

Any suggestion that seeking information about others not named in the charge is too burdensome is also unavailing for Northwestern Mutual. Courts have rejected arguments of burden and routinely approved the Commission's authority to seek information from and about individuals not named in the charge of discrimination, including on a "company-wide" basis. *See EEOC v. Union Pac. R.R.*, 867 F.3d 843, 852 (7th Cir. 2017) (upholding EEOC subpoena of "company-wide" information about job applicants at railroad). Northwestern Mutual has made no specific showing of burden and particularly given the close relationships between the requests and the claims at issue, the Northwestern Mutual's unsupported claims of burdensomeness fail.

### C. DISAGREEMENT WITH THE EEOC IS NOT A LEGITIMATE BASIS FOR FAILING TO COMPLY WITH A SUBPOENA

In responding to EEOC's efforts to investigate this charge, Northwestern Mutual has also put forth a series of objections disagreeing with what it claims are illegitimate changes in position by EEOC on DEI programs and alleging that EEOC has not acted in good faith. These are not a basis for noncompliance. Northwestern Mutual disagrees with the Charging Party's allegations and believes that it has complied with the law as to the Charging Party and other employes. EEOC's effort to collect information to test this does not suggest illegitimate activity by EEOC or a lack of good faith. Obtaining information is how EEOC will reach a determination. EEOC has demonstrated flexibility where appropriate. For example, after discussion with Northwestern Mutual, EEOC shortened the timeframe covered by Request Nos. 11-21 in the RFI from five years to three years. Dir. Dec., Att. 3. (That modified time frame is reflected in the subpoena.) But EEOC's flexibility did not result in the production of any response from Northwestern Mutual. A court order is required to allow the EEOC to proceed with its investigation.

### III. CONCLUSION

For the foregoing reasons, the Court should enforce EEOC's Title VII subpoena. The subpoena seeks information within the EEOC's enforcement authority, is not indefinite, and is relevant to the charge. Northwestern Mutual cannot establish that complying with the subpoena would be unduly burdensome. EEOC therefore respectfully requests the Court to issue the accompanying proposed Order to Show Cause, and, after giving Northwestern Mutual an opportunity to be heard, enforce the subpoena in its entirety (with the exception of Nos. 2-3).

Dated: November 20, 2025                    RESPECTFULLY SUBMITTED,

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

Catherine Eschbach
Acting General Counsel
Christopher Lage
Deputy General Counsel
Gwendolyn Reams
Associate General Counsel
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
131 M Street, N.E., 5th Floor
Washington DC 20507

Gregory Gochanour
Regional Attorney

Deborah Hamilton
Assistant Regional Attorney


*s/ Anne Gallerano*
Jeanne B. Szromba (IL Bar #6207846)
Anne Gallerano (IL Bar #6332700)
Trial Attorneys
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Chicago District Office
230 S. Dearborn St., Ste. 2930
Chicago, IL 60604
Telephone: (312) 872-9692