ATTACHMENT 5



833 EAST MICHIGAN STREET, SUITE 1800
MILWAUKEE, WISCONSIN 53202-5615

TEL·414.273.3500  FAX·414.273.5198

WWW·GKLAW.COM

Direct: 414-287-9601
pheaton@gklaw.com

June 4, 2025

**VIA EEOC RESPONDENT PORTAL
and EMAIL (benjamin.lidholm@eeoc.gov)**

Mr. Benjamin Lidholm
Federal Investigator
U. S. Equal Employment Opportunity Commission
310 W. Wisconsin Avenue, Suite 500
Milwaukee, WI 53203

      Re:    McNulty v. Northwestern Mutual
               EEOC Case No.:  443-2025-01752

Dear Mr. Lidholm:

    I am writing to provide you with Northwestern Mutual's more detailed written objections to the EEOC's May 21, 2025 requests for information, in anticipation of our discussion next week.

    We look forward to meeting with you next week not only to discuss our objections and concerns, but also to discuss the possibility of charting a course for early, cooperative discussions to address the EEOC's apparent concerns about the company's Diversity & Inclusion policies and initiatives.

## Threshold Objections

    Before turning to the individual requests for information, there are five threshold objections that apply to all of the requests for information.

    *First*, Northwestern Mutual objects to each of the requests for information to the extent they are in furtherance of an investigation of discrimination claims that are not rooted in a *valid,* sworn charge of discrimination.  Mr. McNulty's written charge is premised upon a factual misrepresentation of the "Diversity & Inclusion policy" forming the basis for his conclusion (and contention) that he is the victim of unlawful discrimination.  Specifically, Mr. McNulty asserts in his charge that Northwestern Mutual's "Diversity & Inclusion policy" confers "additional … promotional opportunities" upon women and persons of color, and that the company "issued mandatory performance metrics … to advance and promote women and people of color."  These statements mischaracterize and plainly misrepresent the company's actual Diversity & Inclusion policies.  Contrary to Mr. McNulty's criticisms, the actual Diversity & Inclusion policies Mr. McNulty relies upon in his discrimination charge expressly prohibit making hiring or promotion decisions based upon any factors other than merit, and expressly reject "quotas" or other "metrics" mandating the hiring or promotion of a certain number or percentage of women or people of color.

OFFICES IN MILWAUKEE, MADISON, GREEN BAY, APPLETON, AND EAU CLAIRE, WISCONSIN AND WASHINGTON, D.C.
GODFREY & KAHN IS A MEMBER OF TERRALEX®, A WORLDWIDE NETWORK OF INDEPENDENT LAW FIRMS.

Case 2:25-cv-01842-SCD     Filed 11/20/25     Page 2 of 19     Document 3-5

Mr. McNulty's reliance upon a misrepresentation of the company's Diversity & Inclusion policies in support of his discrimination claims is significant, as a "valid" charge of discrimination is a prerequisite for the EEOC to initiate and conduct an investigation. *See EEOC v. Shell Oil Co.*, 466 U.S. 54, 72 n. 26 (1984). Further, "[w]hether a charge is 'valid' – that is, legally sufficient – is a pure question of law." *McLane Co., Inc. v. EEOC*, 581 U.S. 72, n. 3 (2017) (citation to *Shell Oil* omitted). This, too, is important, as Mr. McNulty's discrimination charge submitted to the EEOC, as well as his multiple pre-charge complaints communicated to Northwestern Mutual human resources personnel, are rooted in his criticisms of the company's published "Diversity & Inclusion policy." Accordingly, a court reviewing the "legal sufficiency" of his discrimination charge will consider the *actual* Diversity & Inclusion policy promulgated by Northwestern Mutual, rather than Mr. McNulty's mischaracterization and selective quotations of that policy. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 568 n. 13 (2007).

To be sure, Mr. McNulty is not *required* to point to a written company policy to assert a valid, legally sufficient Title VII discrimination claim against Northwestern Mutual. However, Mr. McNulty's individual discrimination charge not only is based on the explicit allegation that it is the company's Diversity & Inclusion policy that caused him to be passed over for promotion based on his sex, but also alleges his "belief" that those published company policies have subjected "other," unspecified Northwestern Mutual employees to discrimination. Consistent with these allegations in his written charge of discrimination, Mr. McNulty had previously told Northwestern Mutual human resources personnel that he "feels" the company's Diversity & Inclusion policy has subjected him to unlawful discrimination, explaining he reached this "belief" by "following the breadcrumbs." Because Mr. McNulty has not submitted a valid charge of discrimination, *i.e.*, a charge that would withstand scrutiny under the Fed. R. Civ. P. 12(b)(6) standards for discerning the legal sufficiency of claims, there is no authority for this investigation.[1]

---

[1] Nor does Mr. McNulty's sworn claim that he was personally subjected to unlawful discrimination by Northwestern Mutual justify the EEOC to conduct a broad investigation to explore the possibility of a pattern and practice of discrimination. *See, e.g., E.E.O.C. v. TriCore Reference Labs.*, 849 F.3d 929 (10th Cir. 2017) ("a single discriminatory act does not, by itself, warrant a broader pattern-or-practice investigation"); and *E.E.O.C. v. Burlington N. Santa Fe R.R.*, 669 F.3d 1154, 1157-58 (10th Cir. 2012) (while "[a]ny act of discrimination could be part of a pattern or practice of discrimination ... not every charge of discrimination warrants a pattern or practice investigation."). Where the Seventh Circuit has permitted the EEOC to pursue "pattern and practice" evidence in the context of investigating an individual Title VII claim, such a pursuit was justified by existing evidence supporting an inference of widespread discrimination. *See, e.g., E.E.O.C. v. Konica Minolta Business Solutions U.S.A., Inc.*, 639 F.3d 366, 368 (7th Cir. 2011) (based on evidence that all six Black employees of the respondent were employed at a single plant in a predominantly Black neighborhood and were segregated by color within that plant, the court concluded that "[t]hese facts led the EEOC to suspect that Konica might have engaged in discriminatory hiring practices"). As discussed in greater detail below, the only basis for McNulty's claims of systemic discrimination against Northwestern Mutual is the company's Diversity & Inclusion policy, established in conformity with historic, published EEOC pronouncements and interpretations of Title VII published prior to the change in administration in January 2025. As such, Section 713 of Title VII bars these proceedings, as the discrimination charge and investigation challenge conduct and policies pursued in conformity with those EEOC written opinions and interpretations of Title VII. *See* 42 U.S.C. § 2000e-12(b)(1).

Even if Mr. McNulty's allegation Northwestern Mutual's published Diversity & Inclusion policy caused the hiring managers to hold him back from promotion on the basis of his sex was not premised upon a demonstrably false characterization of the written company D&I initiatives he criticizes, there is still no valid ("legally sufficient") claim that Northwestern Mutual has engaged in a pattern and practice of discrimination. Accordingly, to the extent the EEOC seeks to investigate a purported pattern and practice of discrimination, the charge is facially invalid and does not justify requests for information directed to that topic.[2]

Finally, although Mr. McNulty claims he is the victim of unlawful retaliation in violation of Title VII, this claim does not provide any basis or justification to seek documents or data bearing on the validity or invalidity of Mr. McNulty's criticisms of the company's Diversity & Inclusion policies purportedly prompting the alleged retaliation. Because it is unlawful to retaliate against an employee for asserting violations of Title VII *regardless of whether or not the employee's criticisms are meritorious,* Mr. McNulty's retaliation claim provides no basis to investigate the merits of his criticisms of the company's Diversity & Inclusion policies that have no bearing on his claim that he was twice passed over for promotion on the basis of sex. Accordingly, there is no basis for any requests for information directed to the propriety and/or legality of Northwestern Mutual's Diversity & Inclusion policies and initiatives writ large.

*Second*, even a legally sufficient charge of discrimination cannot be pursued in bad faith. *See Shell Oil*, 466 U.S. at 72 n. 26; *EEOC v. Michael Const. Co.*, 706 F.2d 244 (8th Cir. 1983). Accordingly, to the extent the EEOC's investigation is premised upon Mr. McNulty's misrepresentations of the company's written Diversity & Inclusion policies and procedures, the investigation and the corresponding requests for information are improper. Mr. McNulty has carefully reviewed the language in the Diversity & Inclusion policies forming the basis for his claims, so it cannot be plausibly maintained he is unaware those policies expressly prohibit the very unlawful conduct he claims they encourage. Yet his written charge submitted to the EEOC falsely asserts that the company's policies confer "additional promotional opportunities" upon women and people of color and impose mandatory metrics for the hiring and promotion of these classes of employees – though flatly contradicted by the express language of the company's policies.

Specifically, Mr. McNulty has consistently criticized Northwestern Mutual's Diversity & Inclusion policy based on the erroneous contention that requiring people managers to take *proactive steps* to ensure women and persons of color are afforded *equal opportunities* for employment and promotion at Northwestern Mutual somehow violates Title VII – even though these policies expressly admonish that each hiring and promotion decision must be premised

---

[2] Mr. McNulty's unfounded assertion that Northwestern Mutual has engaged in systemic discrimination fails for the additional reason that this element of the charge is not supported by a sworn statement setting forth a "clear and concise statement of *the facts,* including pertinent dates, constituting the alleged unlawful employment practices." *See* 29 C.F.R. § 1601.12. Since the allegation that "other" Northwestern Mutual employees were harmed by Northwestern Mutual's purportedly unlawful Diversity & Inclusion policies is based expressly upon Mr. McNulty's "belief," rather than sworn facts supporting this "belief," there is no sworn factual statement supporting pattern and practice allegations meeting the standards imposed by *Shell Oil* and 29 C.F.R. § 1601.12.

exclusively on merit. Further, Mr. McNulty has admitted to Northwestern Mutual human resources personnel that the basis for his suspicions (his "feeling") that his two female colleagues were promoted ahead of him on the basis of sex is the company's promulgation of the Diversity & Inclusion policies he criticizes. If Mr. McNulty is deliberately misrepresenting the company's written policies in these proceedings as a means to achieve professional advancement he has not earned on merit, his pursuit of this discrimination charge is the epitome of bad faith.

*Third*, even if there were a valid, sworn claim to support an investigation into the company's Diversity & Inclusion policies and practices writ large, Northwestern Mutual is entitled to an explication of the particular elements of the company's written policies that the EEOC contends are unlawful under Title VII. As you know, the Supreme Court has issued significant decisions changing the legal landscape in this arena *subsequent* to the promulgation of the Diversity & Inclusion policies that Mr. McNulty criticizes in his discrimination charge. Further, immediately after the President's January 20, 2025 inauguration, the EEOC began to issue new pronouncements challenging Diversity & Inclusion initiatives that the EEOC had historically endorsed and supported.

Former EEOC Chair Charlotte A. Burrows acknowledged these historic EEOC pronouncements encouraging employers to promulgate diversity programs and initiatives to remove barriers to employment and promotion for members of protected classes and underrepresented members of the workforce. *See* U.S. EEOC Commission, "*A Message from EEOC Chair Charlotte A. Burrows on Expanding Opportunity for All, January 2021-January 2025*," https://www.eeoc.gov/message-eeoc-chair-charlotte-burrows-expanding-opportunity-all-january-2021-january-2025. Ms. Burrows chronicled, just five months ago, the EEOC's historic support for "well-crafted programs to systematically remove barriers to equal opportunity and ensure recruitment of workers from all demographic groups …." Ms. Burrows' January 2025 message provided links to numerous EEOC publications championing and supporting the very diversity and inclusion programs and initiatives that form the basis for Mr. McNulty's discrimination charge. *Id.* at Sections titled, "**ADDRESSING BARRIERS IN RECRUITMENT AND HIRING**," and "**PROTECTING VULNERABLE WORKERS AND PERSONS FROM UNDERSERVED COMMUNITIES FROM EMPLOYMENT DISCRIMINATION**."

For example, the EEOC published its "*Practical Guide to Common Issues and Possible Barriers Which Asian and Native Hawaiian or Other Pacific Islander Employees May Face in the Federal Work Force*" in response to the issuance of Executive Order 13515 on October 14, 2019, listing among recommended "best practices" employer programs to "[e]stablish or enhance targeted recruitment plans to include goals, objectives and completion dates for increasing the number of [Asians, Native Hawaiians or Other Pacific Islander] applicants" to "improve the participation rate" of that particular minority group. *See* https://www.eeoc.gov/federal-sector/reports/practical-guide-common-issues-and-possible-barriers-which-asian-and-native. This is just one publication among dozens disseminated by the EEOC that have encouraged employers to establish diversity and inclusion initiatives employing mentorship programs, training modules, diverse slates, diverse panels, and hiring and recruiting goals designed to ensure equal – not preferential – treatment to women, persons of color, and other members of

protected classes. *See, e.g.,* April 19, 2006 "*Questions and Answers about Race and Color Discrimination*," EEOC-NVTA-2006-1, https://www.eeoc.gov/laws/guidance/questions-and-answers-about-race-and-color-discrimination-employment ("Employers should attempt to recruit from racially diverse sources in order to obtain a racially diverse applicant pool. For example, if the employer's primary recruitment source is a college that has few African American students, the employer should adopt other recruitment strategies, such as also recruiting at predominantly African American colleges, to ensure that its applicant pool reflects the diversity of the qualified labor force"); and "*Report on the Hispanic Employment Challenge in the Federal Government by the Federal Hispanic Work Group*" of the EEOC (recommending "practical, comprehensive solutions" to "remove barriers and level the playing field to encourage greater opportunities for Hispanic applicants and employees," including measures to "increase the advancement opportunities for Hispanic employees" and "the number of Hispanics selected for agency leadership and management training," admonishing that the "selection and interview panels must reflect diversity factors such as sex, race, age and ethnicity," and recommending "EEO/diversity requirements as a critical element in the performance plans of all managers and supervisors").

Since 42 U.S.C. § 2000e-12(b)(1) bars any proceedings or claims challenging conduct undertaken in good faith reliance upon written interpretations and opinions published by the EEOC, Northwestern Mutual is entitled to know the specific basis for the EEOC's requests for information directed to the company's Diversity & Inclusion policies and initiatives. Based on Mr. McNulty's asserted grounds for his discrimination charge and the requests for information propounded by the EEOC, Northwestern Mutual invokes Section 713 as a defense to Mr. McNulty's claims and as a bar to these proceedings.

In an apparent effort to avoid the consequences of Section 713, the EEOC has appended a disclaimer to its January 2025 publication that recommended and encouraged the diversity and inclusion initiatives challenged in these proceedings, warning that this EEOC publication was now merely "archived content" containing information that "may be outdated and links that may no longer function." *See* https://www.eeoc.gov/message-eeoc-chair-charlotte-burrows-expanding-opportunity-all-january-2021-january-2025. However, Congress has made clear that the safe harbor provisions of Section 713 may be invoked by an employer to bar proceedings even if "such interpretation or opinion is modified or rescinded or is determined by judicial authority to be invalid or of no legal effect." *See* 42 U.S.C. § 2000e-12(b).

Section 713 reflects principles of fundamental fairness that Congress saw fit to memorialize as an important component of Title VII, ensuring that employers may safely rely upon EEOC-published opinions and interpretations of Title VII, even in the face of evolving case law and changing views of the EEOC itself, as has occurred here. *See, e.g., EEOC and Justice Department Warn Against Unlawful DEI-Related Discrimination; What To Do If You Experience Discrimination Related to DEI at Work*; and *What You Should Know About DEI-Related Discrimination at Work*. While Mr. McNulty already has identified elements of the company's policies that he claims have subjected him to unlawful discrimination, Section 713 entitles Northwestern Mutual to be plainly advised which elements of these policies form the basis for the EEOC's own investigation.

*Fourth*, to the extent these requests seek information concerning alleged discrimination on any basis other than sex, Northwestern Mutual objects to the relevancy of those requests. Although Mr. McNulty conclusorily asserts that he has been discriminated against on the basis of color, national origin, race, and sex, his written charge of discrimination alleges two instances in which white female colleagues received positions and promotions over him. Significantly, Mr. McNulty does not identify any instances in which he alleges he was unfairly passed over on the basis of color, national origin, or race, as he would be required to do if he intended to pursue such a claim. *See Shell Oil,* 466 U.S. at 72 n. 26; and 29 CFR s 1601.12. This is because allegedly discriminatory employment practices that have caused no harm to Mr. McNulty provide no basis for his Title VII claim (whether couched as disparate treatment or disparate impact). *See Gilty v. Village of Oak Park,* 919 F.2d 1247, 1250, 1255 (7th Cir. 1990) (alleged discriminatory conduct must cause the adverse employment action challenged by the claimant). Accordingly, requests for information directed to categories of alleged unlawful discrimination on any basis other than sex cannot be properly pursued in these proceedings. *See, e.g.*, *EEOC v. United Airlines,* 287 F.3d 643, 653 (7th Cir. 2002).

*Fifth*, Northwestern Mutual objects to these requests to the extent the EEOC seeks records and information for any time period preceding the two specific instances of purportedly unlawful discrimination recited by Mr. McNulty in his written discrimination charge. Although Mr. McNulty did not recite the dates of these instances, as required to assert a "valid" charge of discrimination, the two Northwestern Mutual colleagues referenced in his charge were promoted in June and November of 2024. Accordingly, there is no basis for requesting information or records generated prior to June 1, 2024. *See, e.g.*, *Equal Emp. Opportunity Comm'n v. Joon,* LLC, No. 3:18MC3836-WKW-GMB, 2019 WL 3002969, at *5 n. 1 (M.D. Ala. Mar. 4, 2019), *report and recommendation adopted as modified,* No. 3:18-MC-3836-WKW, 2019 WL 2134596 (M.D. Ala. May 15, 2019) (holding that "subpoena is overly broad to the extent it seeks documents generated prior to the allegations of misconduct appearing on the face of the charge").[3]

## Individual Objections and Responses

**Objections to RFI Number 1**:

Northwestern Mutual objects to the request for employee data sought in the first request for information based on each of the preceding threshold objections, and because this would improperly invade the privacy of these individuals and cause disruption to the company's operations that would ensue if the EEOC were to contact those individuals. Further, Northwestern Mutual objects to this request because it is not reasonably relevant and "the burden [and] expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues

---

[3] Northwestern Mutual further objects to the extent the EEOC seeks documents generated prior to May 5, 2024, which is 300 days prior to the March 1, 2025 filing of the charge of discrimination.

at stake in the litigation, and the importance of the proposed discovery in resolving the issues." *Shell Oil*, 466 U.S. at 72 n. 26; Fed. R. Civ. P. 26(b)(1).

**Response to RFI Number 1**:

Subject to and limited by the preceding objections, and solely for the purpose of seeking a compromise with the EEOC concerning these issues, Northwestern Mutual will provide the information requested in RFI 1(f), (g), (h), and (k) for all current employees in the Enterprise Compliance Department holding the position of Senior Director or higher.

**Objections to RFI Number 2**:

Northwestern Mutual objects to the request for the organizational chart and data sought in the second request for information based on each of the preceding threshold objections, and because this would improperly invade the privacy of these individuals and cause disruption to the company's operations that would ensue if the EEOC were to contact those individuals. Further, Northwestern Mutual objects to this request because it is not reasonably relevant and "the burden [and] expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." *Shell Oil*, 466 U.S. at 72 n. 26; Fed. R. Civ. P. 26(b)(1). Finally, the request is overly broad, unduly burdensome, and too indefinite to the extent it seeks information for employees outside the Enterprise Compliance Department who have any "compliance responsibility," as the meaning of this phrase is ambiguous.

**Response to RFI Number 2**:

Subject to and limited by the preceding objections, and solely for the purpose of seeking a compromise with the EEOC concerning these issues, Northwestern Mutual will provide either an organizational chart or comparable data in its available current format reflecting the reporting relationships between and among the current employees in the Enterprise Compliance Department holding the position of Senior Director or higher (and those employees reporting directly to those persons), redacting the names of those individuals to preserve their privacy and to avoid the disruption to the company's operations that would ensue if the EEOC were to contact those individuals.

**Objections to RFI Number 3**:

Northwestern Mutual objects to the request for job descriptions sought in the third request for information based on each of the preceding threshold objections.

**Response to RFI Number 3**:

Subject to and limited by the preceding objections, and solely for the purpose of seeking a compromise with the EEOC concerning these issues, Northwestern Mutual will produce the current job descriptions for the enumerated categories of employees.

**Objections to RFI Number 4**:

Northwestern Mutual objects to the request for Mr. McNulty's personnel file sought in the fourth request for information based on each of the preceding threshold objections, and because the term "personnel file" is too indefinite. Further, Northwestern Mutual objects to the extent this request seeks documents that contain proprietary data.

**Response to RFI Number 4**:

Subject to and limited by the preceding objections, and solely for the purpose of seeking a compromise with the EEOC concerning these issues, Northwestern Mutual will produce the personnel file for Mr. McNulty (defined as the documents encompassed within Wis. Stat. § 103.13(2)), redacted to mask the names of other Northwestern Mutual employees (other than employees in the human resources department or the person(s) or the names of supervisory personnel contributing to the file), and redacted to mask any proprietary data that may be referenced in that file.

**Objections to RFI Number 5**:

Northwestern Mutual objects to the request for the personnel files sought in the fifth request for information based on each of the preceding threshold objections, and because this would improperly invade the privacy of these individuals and cause disruption to the company's operations if the EEOC were to contact those individuals. Further, Northwestern Mutual objects to the extent this request seeks documents that contain proprietary data.

**Response to RFI Number 5**:

Subject to and limited by the preceding objections, and solely for the purpose of seeking a compromise with the EEOC concerning these issues, Northwestern Mutual will produce the year-end performance evaluations for Jamie Pulsfus; Nicole Lund; and Jeff Schloemer, redacted to mask the names of other Northwestern Mutual employees (other than employees in the human resources department or the person(s) or the names of supervisory personnel contributing to the file), and redacted to mask any proprietary data that may be referenced in such files.

While the EEOC is not permitted to disclose information obtained from Northwestern Mutual as a part of its investigation prior to the filing of a lawsuit, it is important that these private materials be protected from broad disclosure in the event the EEOC were to file an action arising out of this investigation. Accordingly, Northwestern Mutual would condition the production of these materials on the EEOC's assurance that no disclosure would occur unless and until the parties entered into a confidentiality agreement and stipulated proposed order protecting those materials, or such disclosure were permitted by the court. Further, the production of this information is further conditioned upon the EEOC confirming that the contents will not be disclosed to Mr. McNulty or described to Mr. McNulty (directly or indirectly) by the EEOC.

**Objections to RFI Number 6**:

Northwestern Mutual objects to the request for the documents reflecting "feedback solicited or received" for Mr. McNulty, Ms. Lund, and Mr. Schloemer that is sought in the sixth request for information based on each of the preceding threshold objections, and because this would improperly invade the privacy of the individuals submitting the feedback and cause disruption to the company's operations if the EEOC were to contact those individuals. Further, this request is too indefinite as to the meaning of the word "feedback," and unduly burdensome to the extent an expansive or unqualified definition were to be employed for this term. There are innumerable instances in which documents are likely to include contents that could be construed as "feedback" concerning an employee, and it would be impossible to identify and assemble all such documents. Further, Northwestern Mutual objects to the extent this request seeks documents that contain proprietary data.

**Response to RFI Number 6**:

Subject to and limited by the preceding objections, and solely for the purpose of seeking a compromise with the EEOC concerning these issues, Northwestern Mutual will produce documents reflecting feedback solicited or received for the specific purpose of preparing year-end evaluations for the enumerated employees, redacted to mask the names of other Northwestern Mutual employees and redacted to mask any proprietary data that may be referenced in such documents.

While the EEOC is not permitted to disclose information obtained from Northwestern Mutual as a part of its investigation prior to the filing of a lawsuit, it is important that these private materials be protected from broad disclosure in the event the EEOC were to file an action arising out of this investigation. Accordingly, Northwestern Mutual would condition the production of these materials on the EEOC's assurance that no disclosure would occur unless and until the parties entered into a confidentiality agreement and stipulated proposed order protecting those materials, or such disclosure were permitted by the court. Further, the production of this information is further conditioned upon the EEOC confirming that the contents will not be disclosed to Mr. McNulty or described to Mr. McNulty (directly or indirectly) by the EEOC.

**Objections to RFI Number 7**:

Northwestern Mutual objects to the request for the McNulty complaint investigation materials sought in the seventh request for information based on each of the preceding threshold objections, and to the extent this request seeks to invade the attorney-client privilege and/or intrude into attorney work product. Further, the request is too indefinite to the extent it refers to "complaints of discrimination," "actions taken as a result of such complaints," and seeks "documents or analysis … relied upon" in concluding that the company's Diversity & Inclusion goals do not violate Title VII. This request is unduly burdensome to the extent an expansive or unqualified definition were to be employed for these phrases.

Mr. Benjamin Lidholm
June 4, 2025
Page 10

**Response to RFI Number 7**:

Subject to and limited by the preceding objections, and solely for the purpose of seeking a compromise with the EEOC concerning these issues, Northwestern Mutual will produce documents reflecting (a) Mr. McNulty's written complaints or criticisms of the company's Diversity & Inclusion policies, procedures, goals, and initiatives transmitted to his superiors and/or to the human resources department; (b) Northwestern Mutual's written responses to Mr. McNulty concerning the items noted in subsection (a); (c) non-privileged summaries of the complaints or criticisms prepared by the human resources department pursuant to its established procedures; and (d) non-privileged memos prepared by the human resources department reflecting interviews conducted, if any, in response to any of the complaints or criticisms noted in subsection (a) of this response.

**Objections to RFI Number 8**:

Northwestern Mutual objects to the request for the "affirmative action plans" sought in the eighth request for information, and the request for an identification of the time period during which Northwestern Mutual "was not a federal contractor," based on each of the preceding threshold objections. Northwestern Mutual further objects to the phrase "affirmative action plan" as too indefinite, inasmuch as this term of art takes on different meanings in different contexts. Finally, Northwestern Mutual objects to this request on the basis that the company's status (or lack of status) as a federal contractor calls for the respondent to convey legal conclusions to the EEOC, rather than providing documents or data within the purview of 42 U.S.C. § 2000e-8(a)

**Response to RFI Number 8**:

Northwestern Mutual stands on its objections, though we are willing to reconsider our response if the EEOC provides an explanation and justification for this request and identifies the relevancy of such information in the context of Mr. McNulty's particular charge of discrimination.

**Objections to RFI Number 9**:

Northwestern Mutual objects to the request for documents "relied upon to develop its Diversity & Inclusion policies or programs," "any analysis that shows that respondent had engaged in past discrimination," and documents reflecting "any other basis that respondent believes supports favoring employees of a certain race, sex, national origin, or sexual orientations," as sought in the ninth request for information, based on each of the preceding threshold objections. Northwestern Mutual also objects to this request because the phrase "Diversity & Inclusion policies or programs" is too indefinite to allow the respondent to formulate an accurate response. Moreover, Northwestern Mutual objects to this request to the extent it seeks to invade the attorney-client privilege and/or intrude into attorney work product.

Finally, Northwestern Mutual rejects the premise for the request, as Northwestern Mutual never knowingly engaged in unlawful discrimination in violation of Title VII or otherwise, nor has the company ever "support[ed] favoring employees of a certain race, sex, national origin, or sexual orientations," inasmuch as Northwestern Mutual is an equal opportunity employer. Northwestern Mutual is troubled by the EEOC's reference to a purported belief by Northwestern Mutual that certain categories of employees who are members of protected classes should be "favored" over other employees.

The phrasing of this request by the EEOC appears to endorse Mr. McNulty's mischaracterizations of the company's diversity and inclusion initiatives, prejudging the merits of Mr. McNulty's contentions and Northwestern Mutual's response to those contentions at the very outset of these proceedings. This is particularly disconcerting where, as here, the plain language of the company's Diversity & Inclusion policies and procedures flatly contradicts any such purported "belief" by Northwestern Mutual (as set forth in great detail in the company's position statement, supported by direct quotations from those materials).

**Response to RFI Number 9**:

Northwestern Mutual stands on its objections, though we are willing to reconsider our response if the EEOC identifies the elements of the company's published Diversity & Inclusion policies and procedures that the EEOC contends violates Title VII and the nexus between those elements and Mr. McNulty's assertion that he was unlawfully passed over for promotion in favor of the two employees specifically referenced in his sworn discrimination charge.

**Objections to RFI Number 10**:

Northwestern Mutual objects to the request for documents "showing any complaints … from any employee, contractor, other individual or any person or entity representing such individuals … regarding respondent's Diversity & Inclusion policies or training or any employment opportunity … awarded or offered on the basis of diversity & inclusion," as requested in the tenth request for information, based on each of the preceding threshold objections.

Northwestern Mutual also objects to this request as too indefinite, in multiple respects, to allow the respondent to formulate an accurate response. Moreover, Northwestern Mutual objects to this request to the extent it seeks to invade the attorney-client privilege and/or intrude into attorney work product. The request also is overly broad to the extent it is not confined to complaints submitted by persons similarly situated to Mr. McNulty who asserted claims of unlawful discrimination on the basis of sex.

Finally, Northwestern Mutual objects to this request as invading the privacy of third persons who are not parties to these proceedings, and because disclosing their identities would cause substantial business disruption if the EEOC were to contact these individuals.

**Response to RFI Number 10**:

Northwestern Mutual stands on its objections, though we are willing to reconsider our response if the EEOC identifies the elements of the company's published Diversity & Inclusion policies and procedures that the EEOC contends violates Title VII and the nexus between those elements and Mr. McNulty's assertion that he was unlawfully passed over for promotion in favor of the two employees specifically referenced in his sworn discrimination charge.

**Objections to RFI Number 11**:

Northwestern Mutual objects to the request for documents reflecting employee training "where race, national origin, sex, or sexual orientation" is a criteria or consideration for participation, as requested in the eleventh request for information, based on each of the preceding threshold objections.

Northwestern Mutual also objects to this request as too indefinite, in multiple respects, to allow the respondent to formulate an accurate response. Moreover, the request also is overly broad to the extent it seeks documents and data concerning the company's independent contractor field sales force or concerning categories of protected classes under Title VII other than sex.

**Response to RFI Number 11**:

Northwestern Mutual stands on its objections, though we are willing to reconsider our response if the EEOC identifies the elements of the company's published Diversity & Inclusion policies and procedures that the EEOC contends violates Title VII and the nexus between those elements and Mr. McNulty's assertion that he was unlawfully passed over for promotion in favor of the two employees specifically referenced in his sworn discrimination charge.

**Objections to RFI Number 12**:

Northwestern Mutual objects to the request for documents reflecting employees who participated in the enumerated categories of training, as requested in the twelfth request for information, based on each of the preceding threshold objections.

Northwestern Mutual also objects to this request as too indefinite, in multiple respects, to allow the respondent to formulate an accurate response. Moreover, the request also is overly broad to the extent it seeks documents and data concerning the company's independent contractor field sales force or concerning categories of protected classes under Title VII other than sex. Northwestern Mutual also objects to the request as improperly invading the privacy of such employees, and because the request would result in substantial business disruption if the EEOC were to contact these employees.

**Response to RFI Number 12**:

Northwestern Mutual stands on its objections, though we are willing to reconsider our response if the EEOC identifies the elements of the company's published Diversity & Inclusion policies and procedures that the EEOC contends violates Title VII and the nexus between those elements and Mr. McNulty's assertion that he was unlawfully passed over for promotion in favor of the two employees specifically referenced in his sworn discrimination charge.

**Objections to RFI Number 13**:

Northwestern Mutual objects to the request for documents reflecting "training comparable to the Field Diversity & Inclusion Early Career Advisor Programs" and other enumerated categories of training, as requested in the thirteenth request for information, based on each of the preceding threshold objections.

Northwestern Mutual also objects to this request as too indefinite, in multiple respects, to allow the respondent to formulate an accurate response. Moreover, the request also is overly broad to the extent it seeks documents and data concerning the company's independent contractor field sales force or concerning categories of protected classes under Title VII other than sex. Finally, it is difficult to understand what is actually being requested in this request for information.

**Response to RFI Number 13**:

Northwestern Mutual stands on its objections, though we are willing to reconsider our response if the EEOC identifies the elements of the company's published Diversity & Inclusion policies and procedures that the EEOC contends violates Title VII and the nexus between those elements and Mr. McNulty's assertion that he was unlawfully passed over for promotion in favor of the two employees specifically referenced in his sworn discrimination charge.

**Objections to RFI Number 14**:

Northwestern Mutual objects to the request for documents reflecting employees who participated in the enumerated categories of training, as requested in the fourteenth request for information, based on each of the preceding threshold objections.

Northwestern Mutual also objects to this request as too indefinite, in multiple respects, to allow the respondent to formulate an accurate response. Moreover, the request also is overly broad to the extent it seeks documents and data concerning the company's independent contractor field sales force or concerning categories of protected classes under Title VII other than sex. Northwestern Mutual also objects to the request as improperly invading the privacy of such employees, and because the request would result in substantial business disruption if the EEOC were to contact these employees.

**Response to RFI Number 14**:

Northwestern Mutual stands on its objections, though we are willing to reconsider our response if the EEOC identifies the elements of the company's published Diversity & Inclusion policies and procedures that the EEOC contends violates Title VII and the nexus between those elements and Mr. McNulty's assertion that he was unlawfully passed over for promotion in favor of the two employees specifically referenced in his sworn discrimination charge.

**Objections to RFI Number 15**:

Northwestern Mutual objects to the request for documents reflecting a "D&I Report" and other documents consolidating "information about diversity and inclusion" at Northwestern Mutual, as requested in the fifteenth request for information, based on each of the preceding threshold objections.

Northwestern Mutual also objects to this request as too indefinite, in multiple respects, to allow the respondent to formulate an accurate response. Moreover, the request also is overly broad to the extent it seeks documents and data concerning the company's independent contractor field sales force or concerning categories of protected classes under Title VII other than sex.

**Response to RFI Number 15**:

Northwestern Mutual stands on its objections, though we are willing to reconsider our response if the EEOC identifies the elements of the company's published Diversity & Inclusion policies and procedures that the EEOC contends violates Title VII and the nexus between those elements and Mr. McNulty's assertion that he was unlawfully passed over for promotion in favor of the two employees specifically referenced in his sworn discrimination charge.

**Objections to RFI Number 16**:

Northwestern Mutual objects to the request for documents concerning the Sustained Action for Racial Equity program, as requested in the sixteenth request for information, based on each of the preceding threshold objections.

Northwestern Mutual also objects to this request as too indefinite, in multiple respects, to allow the respondent to formulate an accurate response. Moreover, the request also is overly broad, as it is confined to seeking documents and data concerning the company's independent contractor field sales force and have no bearing on allegedly unlawful discrimination based on sex.

**Response to RFI Number 16**:

Northwestern Mutual stands on its objections.

**Objections to RFI Number 17**:

Northwestern Mutual objects to the request for documents concerning the strategy for "Pursuing Diversity & Inclusion as a Growth Strategy," as requested in the seventeenth request for information, based on each of the preceding threshold objections.

Northwestern Mutual also objects to this request as too indefinite, in multiple respects, to allow the respondent to formulate an accurate response. Moreover, the request also is overly broad, as it is confined to seeking documents and data concerning the company's independent contractor field sales force and has no bearing on allegedly unlawful discrimination based on sex.

**Response to RFI Number 17**:

Northwestern Mutual stands on its objections.

**Objections to RFI Number 18**:

Northwestern Mutual objects to the request for the list of the recipients of the Diversity & Inclusion Champion Award, as requested in the eighteenth request for information, based on each of the preceding threshold objections.

Northwestern Mutual also objects to this request as too indefinite, in multiple respects, to allow the respondent to formulate an accurate response. Moreover, the request also is overly broad, as it is confined to seeking documents and data concerning the company's independent contractor field sales force and has no bearing on allegedly unlawful discrimination based on sex. Finally, the request for personal information improperly invades the privacy of those recipients and would cause substantial disruption to the company's business operations.

**Response to RFI Number 18**:

Northwestern Mutual stands on its objections.

**Objections to RFI Number 19**:

Northwestern Mutual objects to the request for documents and data concerning the company's "performance management system" and the "system used … and the various metrics tracked" by the system, as requested in the nineteenth request for information, based on each of the preceding threshold objections.

Northwestern Mutual also objects to this request as too indefinite, in multiple respects, to allow the respondent to formulate an accurate response. Finally, the request for personal information improperly invades the privacy of those recipients and would cause substantial disruption to the company's business operations.

**Response to RFI Number 19**:

Northwestern Mutual stands on its objections, though we are willing to reconsider our response if the EEOC identifies the elements of the company's published Diversity & Inclusion policies and procedures that the EEOC contends violates Title VII and the nexus between those elements and Mr. McNulty's assertion that he was unlawfully passed over for promotion in favor of the two employees specifically referenced in his sworn discrimination charge.

**Objections to RFI Number 20**:

Northwestern Mutual objects to the request for the identity and related data concerning employees who received "credit" or "positive feedback in accord" with the People Leader Toolkit, as requested in the twentieth request for information, based on each of the preceding threshold objections.

Northwestern Mutual also objects to this request as too indefinite, in multiple respects, to allow the respondent to formulate an accurate response. Further, it would be impracticable (if not impossible) to identify and assemble documents reflecting "credit" or "positive feedback" related to these D&I goals, even if the request were confined to Enterprise Compliance Department employees. Finally, the request for the identities of these individuals and their personal information improperly invades the privacy of those employees, and disclosure of this information would cause substantial disruption to the company's business operations.

**Response to RFI Number 20**:

Northwestern Mutual stands on its objections, though we are willing to reconsider our response if the EEOC identifies the elements of the company's published Diversity & Inclusion policies and procedures that the EEOC contends violates Title VII and the nexus between those elements and Mr. McNulty's assertion that he was unlawfully passed over for promotion in favor of the two employees specifically referenced in his sworn discrimination charge.

**Objections to RFI Number 21**:

Northwestern Mutual objects to the request for the identity and related data concerning employees who received "positive feedback for sponsoring" a woman or person of color, "in accord" with the People Leader Toolkit, as requested in the twenty-first request for information, based on each of the preceding threshold objections.

Northwestern Mutual also objects to this request as too indefinite, in multiple respects, to allow the respondent to formulate an accurate response. Further, it would be impracticable (if not impossible) to identify and assemble documents reflecting "positive feedback" related to these D&I goals, even if the request were confined to Enterprise Compliance Department employees. Finally, the request for the identities of these individuals and their personal information improperly invades the privacy of those employees, and disclosure of this information would cause substantial disruption to the company's business operations.

**Response to RFI Number 21**:

Northwestern Mutual stands on its objections, though we are willing to reconsider our response if the EEOC identifies the elements of the company's published Diversity & Inclusion policies and procedures that the EEOC contends violates Title VII and the nexus between those elements and Mr. McNulty's assertion that he was unlawfully passed over for promotion in favor of the two employees specifically referenced in his sworn discrimination charge.

## Objections and Response to Request for Interview

Northwestern Mutual objects to producing Amy Hanneman for an interview as a part of the EEOC's investigation into these proceedings. There is no statutory basis to compel a respondent to produce officers of the organization for interviews; Congress has limited the EEOC to pursuing compulsory production of data and documents. *See* 42 U.S.C. §2000e-8(a).

More importantly, we do not believe such an interview would be appropriate for the reasons set forth in the five, threshold objections to the requests for information. While the company normally would consider voluntarily producing its employees for EEOC interviews to facilitate an EEOC investigation, it would only do so if it concluded that such interviews were appropriate within the context of the particular investigation being conducted. For each of the reasons we have explained, such is not the case here.

However, the company may be willing to reconsider its response to this request after the EEOC has identified the elements of the company's published Diversity & Inclusion policies and procedures that the EEOC contends violates Title VII and the nexus between those elements and Mr. McNulty's assertion that he was unlawfully passed over for promotion in favor of the two employees specifically referenced in his sworn discrimination charge.

We also believe a discussion of the current status of the company's policies, programs and initiatives in the wake of recent Supreme Court precedents and newly issued EEOC pronouncements may be productive.

## Rolling Production

Northwestern Mutual proposes a rolling production of documents and information, such production to begin thirty days after the EEOC propounded its requests, *i.e.*, beginning on or before June 23, 2025, as June 21, 2025 is a Saturday.

## Conclusion

As Northwestern Mutual has conveyed to Mr. McNulty and to the EEOC, the company is committed to ensuring that its Diversity & Inclusion programs, policies and initiatives conform fully to Title VII and all state and federal laws governing the company's employment practices.

While we do not believe Mr. McNulty's charge of discrimination is legally sufficient or that his individual claim of discrimination warrants the broad scope of the investigation

contemplated by the EEOC (as reflected in the subject requests for information), Northwestern Mutual invites a full and candid discussion of the company's historic and current Diversity & Inclusion policies, programs, and initiatives with you and your colleagues, outside the context of the requests for information directed to Mr. McNulty's individual discrimination claim.

Northwestern Mutual is committed to full compliance with the law, and the EEOC is charged with ensuring such compliance. Accordingly, it is Northwestern Mutual's sincere belief that these mutual interests would be advanced by such a discussion and exchange. It is likely there will be significant common ground from the outset, and the resolution of any potential areas of disagreement may be facilitated and accelerated by such early, direct communications.

I look forward to discussing the possibility of such exchange when we speak next week.

Sincerely,

GODFREY & KAHN, S.C.

*Paul F. Heaton*

Paul F. Heaton
Counsel for Northwestern Mutual


cc:     Rebeca M. Lopez

33130500.1